IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) ) ) ) ) ) ) ) | No. 14 C 6537 |
| v. | | Judge Virginia M. Kendall |
| JOHN WALSH, | | |

## MEMORANDUM OPINION AND ORDER

Petitioner John Walsh asks the Court to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Dkt. No. 1.) Walsh is currently serving 150 months imprisonment for his involvement in a wire fraud scheme. He claims that his Sixth Amendment right to effective assistance of counsel was violated for six reasons: (1) his attorney failed to object to his plea agreement for lack of specificity; (2) his attorney did not object to the Court's restitution order at sentencing; (3) his attorney did not oppose the Government's motions for extension to charge Walsh by information or indictment under the Speedy Trial Act or the Sixth Amendment right to a speedy trial; (4) his attorney did not preserve the right to challenge the Court's restitution order on appeal; (5) his attorney did not reasonably investigate his case by consulting with Walsh and preparing his expert witness; and (6) his attorney failed to argue that Walsh lacked the requisite mens rea. For the reasons stated therein, the Court denies Walsh's motion for relief under Section 2255. (Dkt. No. 1.)

## BACKGROUND

Walsh and his co-defendant Charles Martin were charged by Information on August 17, 2009 with devising and participating in a wire fraud scheme in violation of 18 U.S.C. § 1343 and

1

with violating the Commodities Exchange Act in violation of Title 7 U.S.C. Section 13(a)(1) and (a)(3) and with tax evasion in violation of Title 2 Section 7201. (R. 74.) They were principals of One World Capital Group, LLC, a future and foreign currency trading company, who conducted a plan to defraud One World's customers. (R. 74.) Walsh pled guilty on May 12, 2011 to three counts of the Information: wire fraud, tax evasion, and making a false statement to the Commodity Futures Trading Commission. (Dkt. No. 1, at 1.) On February 2, 2012, the Court sentenced Walsh to 150 months imprisonment. *Id.* He appealed several issues to the Seventh Circuit and the Court denied his appeal in its opinion issued on August 14, 2013. (R. 306); *United States v. Walsh*, 723 F.3d 802 (7th Cir. 2013). Walsh filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 on August 20, 2014. (Dkt. No. 1, at 1.)

## DISCUSSION

### I. *Strickland* Standard

Walsh attempts to circumvent his procedural default by framing all of his claims as arising from ineffective assistance of counsel. Generally, under the procedural default rule claims not raised on appeal may not be raised on collateral review—such as a Section 2255 petition—unless the petitioner shows cause and prejudice. *See Bousley v. United States v. Frady*, 523 U.S. 614, 621-22 (1998). Walsh's ineffective assistance of counsel claims are not subject to a procedural default because under *Massaro v. United States*, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." 538 U.S. 500, 504 (2003); *see also United States v. Harris*, 394 F.3d 543, 557-58 (7th Cir. 2005). The Court will therefore address the merits of Walsh's ineffective assistance of counsel claims.

Under *Strickland v. Washington*, a defendant's Sixth Amendment right to counsel is violated when (1) counsel's performance was deficient, meaning "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment"; and (2) counsel's deficient performance prejudiced the defendant such that but for the deficiency, there is a reasonable probability that the result of the proceedings would have been different. 466 U.S. 668, 687 (1984). As to the first prong, the "[C]ourt must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and presume that it is a "sound trial strategy." *Id.* at 689; *see Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 2000). A defendant must identify specific acts or omissions by counsel that constitute ineffective assistance, and the Court then considers whether they are outside the wide range of professionally competent assistance based on all the facts of the case. *See Menzer*, 200 F.3d at 1003. The Court must resist the urge to "Monday morning quarterback" by questioning counsel's decisions after the fact, but rather evaluate counsel's performance based on her perspective at the time. *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990); *Strickland*, 466 U.S. at 690. The strong presumption in favor of finding counsel's performance competent grants the greatest protection to "strategic choices made after thorough investigation of law and facts relevant to plausible options[.]" *Strickland*, 466 U.S. at 690.

The second *Strickland* prong requires the defendant to prove that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *United States v. Starnes*, 14 F.3d 1207, 1210 (7th Cir. 1994) (quoting *United States v. Moralez*, 964 F.2d 677, 683 (7th Cir. 1992)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In assessing this probability, the Court "must consider the totality of the evidence before the judge or jury."

*Id.* at 695. Where the defendant has pled guilty, in order to satisfy the prejudice prong he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The defendant must specifically allege more than that she would have insisted on trial but also present objective evidence that she would not have pled guilty. *See Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010); *Quintana v. Chandler*, 723 F.3d 849, 856 (7th Cir. 2013). Such objective evidence includes misinformation provided by counsel and the history of plea negotiations. *Hutchings*, 618 F.3d at 697.

## II. Specificity of Walsh's Plea Agreement

Walsh argues that his counsel was ineffective for failing to object to his plea agreement's lack of specificity. (Dkt. No. 17 at 3-4.) He claims that because he pled guilty to only Counts Two, Four, and Six and (not Count One) and Count Two references the fraudulent scheme that is the subject of Count One, the plea agreement was not sufficiently specific because Count Two failed to reallege the fraudulent scheme. *Id.* Walsh asserts that his counsel should have objected to this deficiency. *Id.* The Government responds that it would have been futile for Walsh's attorney to object to the plea agreement because an indictment can "incorporate by reference the manner and means by which a fraudulent scheme is effectuated into the individual counts charging the execution of the scheme." (Dkt. No. 16 at 12.)

Because Walsh's plea agreement incorporated the fraudulent scheme from Count One into Count Two, his counsel was not ineffective since any objection would have been futile. An indictment or information incorporates by reference the facts of a fraudulent scheme into each count and does not need to clarify that fraudulent predicates are incorporated by reference. *See United States v. O'Connor*, 656 F.3d 630, 646 (7th Cir. 2011) (finding that an indictment

4

incorporated by reference an entire fraudulent scheme where the defendant argued that some facts only pertained to other participants in the scheme); *see, e.g., United States v. Dempsey*, 768 F.Supp. 1256, 1264 (N.D. Ill. 1990) (finding it "nonsensical" that a count needs to contain the words "incorporated by reference" in order to incorporate fraudulent predicates from other counts in the indictment because such incorporation is implied). Nonetheless, Count Two of the indictment clearly states that all allegations of Count One are "realleged and incorporated as if fully restated herein." (No. 09 CR 5-2, Dkt. No. 74 at 8.) Thus, because there was no error in the indictment for lack of incorporation that Walsh's counsel could have objected to, he was not ineffective for failing to do so.

## III. Calculation of Restitution

Walsh next claims that his Sixth Amendment rights were violated because his attorney did not object to the restitution ordered by the Court at sentencing. (Dkt. No. 1 at 9.) He argues that the restitution order was improperly based on his customers' losses in the fraudulent scheme, and that his counsel was ineffective because he did not object to these errors at sentencing.[1] *Id.* In response, the Government asserts that his counsel was not ineffective for failing to object to the restitution amount because Walsh was liable to restitution for the "losses incurred by the victims of the scheme as a whole." (Dkt. No. 16 at 13.)

Walsh's restitution permissibly included losses resulting from the entire fraudulent scheme that he participated in; consequently, his counsel was not ineffective for failing to challenge it. Walsh pled guilty to participating in a scheme to defraud customers and prospective customers of One World. (No. 09 CR 5-2, Dkt. No. 74 at 2-3.) The Court at sentencing correctly determined Walsh's restitution under the Mandatory Victim Restitution Act that applies

---

[1] Walsh argues in his reply that his counsel was ineffective for failing to object to the restitution order also because it was based on numbers calculated by dysfunctional computers. (Dkt. No. 17 at 7.) Walsh waived this argument because he raised it for the first time in his reply. *See Gonzales v. Mize*, 565 F.3d 373, 382 (7th Cir. 2009).

to sentencing proceedings in wire fraud cases. 18 U.S.C. § 3663A(c)(1)(A)(ii). Under the MVRA, the Court "shall order" Walsh to pay restitution to the "victim of the offense," which in the case of a scheme includes "any person directly harmed by the defendant's criminal conduct in the course of the scheme." 18 U.S.C. § 3663A(a)(2). Here, the victims of the fraudulent scheme were One World customers. Thus, the Court properly ordered Walsh to pay restitution to any customer that lost money as a result of the scheme regardless of whether Walsh personally defrauded them. *See id.*; *United States v. Rutley*, 482 F.App'x 175, 179 (7th Cir. 2012) (under the MVRA, any victim of the scheme can receive restitution even if they are not identified in the indictment); *United States v. Locke*, 643 F.3d 235, 247 (7th Cir. 2011) ("the crime comprehended by the mail and wire fraud statutes is the scheme to defraud, not just the isolated iterations of wire transmissions or mailings, so restitution for victims of the overall scheme is required."). The Court followed MVRA's mandate by ordering Walsh to provide restitution to all victims of the fraudulent scheme at One World. Accordingly, Walsh's counsel was not ineffective by protesting the restitution order because the Court committed no error in its calculations.

## IV.    Right to Speedy Trial

Walsh's next ineffective assistance of counsel claim is based on his counsel's failure to protest the Government's motions for an extension to charge him by indictment or information so as to avoid a violation of the Speedy Trial Act. (Dkt. No. 1 at 8.) He asserts that his counsel's failure to object to these extensions violated his right to effective assistance of counsel because his attorney did not defend his right to a speedy trial under the Speedy Trial Act and Sixth Amendment. *Id.* Walsh opines that the violation occurred when the Government's motions were granted after his counsel did not object, and he waited in jail for over seven months after his

arrest until the Government charged him by information. *Id.* Walsh further proposes that his counsel was ineffective because he did not challenge the timing of the Government's information under his Sixth Amendment right to a speedy trial. *Id.* at 8-9. He argues that during the seven months between his arrest and when the Government charged him by information, the evidence that supported Walsh's defense was altered and rendered useless. (Dkt. No. 4 at 2, 5.)

The Government counters that any objection by Walsh's counsel made under the Speedy Trial Act would have been fruitless because the Government properly acquired extensions and they were merited. (Dkt. No. 16 at 18.) Moreover, the Government points out that that even if the Court had agreed with an objection by Walsh's counsel and dismissed the charges, the Government could have simply brought identical charges. *Id.* at 16. Therefore, the decision by Walsh's attorney to not object based on the Speedy Trial Act could have been a strategic decision that is protected under *Strickland*. *Id.* at 16-17. With respect to the Sixth Amendment argument, the Government proposes that no Sixth Amendment violation occurred that could have been the basis for an objection because the delay was not excessive, Walsh did not object to any of the Government's proposed extensions, and the delay did not prejudice Walsh. *Id.* at 19-20.

**A.  Speedy Trial Act**

Under *Strickland*, Walsh must prove first, that the decision by his counsel to not object to the Government's motions for an extension on the basis that they violated the Speedy Trial Act constituted deficient performance because it falls outside the wide realm of reasonable professional assistance; and second, that decision prejudiced Walsh such that there is a reasonable probability that he would not have pled guilty. *See* 466 U.S. at 687; *Hill*, 474 U.S. at 59. Walsh does not establish that his counsel performed deficiently by failing to object to the

Government's motions for an extension to charge Walsh because the Government did not violate the Speedy Trial Act, and therefore his counsel had no basis to object to the Government's motions for an extension. The Government moved for extensions in order to avoid a violation of the Speedy Trial Act and the Court granted each motion, each time with agreement by the defense, thereby extinguishing any Speedy Trial Act claim that Walsh could have brought. (No. 09 CR 5-2, Dkt. Nos. 13, 20, 28, 49, 56, 63, & 66.) Where the Speedy Trial Act has not been violated, a defendant's ineffective assistance of counsel claim for a failure to challenge his right to a speedy trial is unfounded. *See Blake v. United States*, 723 F.3d 870, 885 (7th Cir. 2013) ("because [the defendant] fails in his effort here to demonstrate that the Act was in fact violated, his counsel cannot be deemed ineffective for having failed to file a motion to dismiss the indictment on that basis."); *see, e.g., United States v. Orozco*, No. 10 C 7652, 2014 WL 2781838 at *3 (N.D. Ill. June 19, 2014) (rejecting ineffective counsel claim based on failure to raise violation of Speedy Trial Act because there was none.); *Evans v. United States*, No. 14 C 0262, 2014 WL 2069366 at *4 (N.D. Ill. May 19, 2014) ("Because Evans cannot establish that there was a Speedy Trial Act violation in the first instance, his second ineffective assistance of counsel claim is factually baseless and without merit.").

The Court rejects Walsh's claim for the additional reason that his counsel's failure to object to the Government's motions for extensions was a strategic choice grounded in reasonable professional judgment. The *Strickland* standard for performance grants such strategic decisions extra deference, calling them "virtually unchallengeable" in a Sixth Amendment claim for ineffective assistance of counsel. 466 U.S. at 690. To begin, the case was charged by Information and the Defendant himself openly waived his right to have the charges brought by the grand jury due to fact that he was cooperating and his attorney was working with the

evidence. The case involved a significant number of financial documents which his counsel was required to review before allowing his client to enter into a plea. From August 17, 2009 to April 5, 20100--the date of the Information to the Change of Plea hearing--was a reasonable amount of time for his attorney to review the evidence and prepare his client. Aside from there being no ineffectiveness of counsel, Defendant cannot establish a prejudice for his counsel's failure to exclude time. Even if the Court were to dismiss the case for violating the Speedy Trial Act, the Court can dismiss the case without prejudice. *See* 18 U.S.C. § 3162(a)(1). Meaning that even if Walsh's counsel had objected to the Government's motions for an extension in light of the Speedy Trial Act and the Court had dismissed the case without prejudice, the Government could have brought identical charges against Walsh later. Walsh's counsel therefore could have made the reasonable professional decision to allow the Government to move for extensions during the time that he was reviewing the evidence, an appropriate and necessary strategy to prepare his client to enter the plea agreement. Under *Strickland*, the Court will defer to reasonable strategic decisions made by counsel so long as they are "based on professional judgment." 466 U.S. at 681. Here, it was professionally reasonable for Walsh's counsel to make the strategic choice of allowing the Government's motions for an extension to go unchallenged because he needed the extension in order to fulfill his obligations as Defendant's counsel to review all of the evidence, he maintained a cooperative relationship with the Government in order to allow Defendant to plead to an Information, and to obtain favorable terms in that plea agreement while discussing the evidence. These strategic decisions, along with the fact that if his case was dismissed for violations of the Speedy Trial Act, the charges could be brought again show that no effective assistance of counsel occurred. *See, e.g., Cooper v. United States*, No. 09-162-DH, 2012 WL 996947 at *11 (S.D. Ill. Mar. 23, 2012) (finding counsel did not violate defendant's Sixth

Amendment rights for failing to object to a potential violation of the Speedy Trial Act because it may have been a strategic decision that deserves great deference); *Campos v. United States*, Nos. 09 C 7778, 04 CR 156, 2010 WL 2179548 at *3 (N.D. Ill. May 27, 2010) (holding that because the defendant failed "to show that the proceedings would have been different had his attorneys raised a Speedy Trial Act violation, [his] attorneys' failure to raise a Speedy Trial Act violation does not constitute ineffective assistance of counsel under *Strickland*."); *Figueroa v. United States*, No. 07 C 6321, 2009 WL 310905 at *4 (N.D. Ill. Feb. 9, 2009) (concluding counsel was not ineffective for failing to object to Government's motion for an extension due to the Speedy Trial Act because it was a strategic decision as the case would likely have been dismissed without prejudice). Walsh's ineffective assistance of counsel claim based on his counsel's failure to object under the Speedy Trial Act to the Government's motions of an extension therefore fails because his counsel made a reasonable, strategic choice that is protected under *Strickland*.

Walsh's claim that the evidence had been altered in some way during the period of time that his attorney was reviewing it is simply conjecture and not based on fact or on any reasonable inference and therefore cannot constitute prejudice. *See Hill*, 474 U.S. at 60 (petitioner's failure to explain how counsel's representation caused him to plead guilty rather than proceed to trial defeated claim that he was prejudiced by allegedly deficient representation).

**B.    Sixth Amendment Right to Speedy Trial**

The Court balances four factors to determine whether the Sixth Amendment right to a speedy trial has been violated. *See Doggett v. United States*, 505 U.S. 647, 651 (1992). They are: (1) whether the delay before trial was uncommonly long, (2) whether the Government or the defendant is more to blame for the delay, (3) whether the defendant asserted his right to a speedy

trial, and (4) whether he suffered prejudice as the delay's result. *Id.* The first factor is a "triggering mechanism" because "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Doggett*, 505 U.S. at 651-52. In this case, a delay of seven and a half months is not presumptively prejudicial. *See Owens v. Frank*, 394 F.3d 490, 504 (7th Cir. 2005) (affirming district court's conclusion that seven months was relatively short and therefore not presumptively prejudicial); *Hogan v. McBride*, 74 F.3d 144, 145 (7th Cir. 1996) ("The delay between charge and trial, approximately eight months, is not presumptively prejudicial."); *Doggett*, 505 U.S. at 652 n.1 (observing that "the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year."). It is difficult to see how Walsh could find the seven and a half months as being prejudicial when his lawyer was reviewing the voluminous documents supporting the Government's case against him which his attorney was then required to review. Hence, the first factor weighs in favor of no violation of Walsh's Sixth Amendment rights. And because Walsh must point to a presumptively prejudicial delay in order to prove a violation of his Sixth Amendment right to a speedy trial, Walsh's ineffective assistance of counsel claim for failure to assert his right to a speedy trial succumbs the same reason as the previous claims: his counsel was not ineffective because it was not professionally reasonable to assert rights that were never violated.

Nevertheless, a balancing of the remaining *Barker* factors weighs also in favor of finding no violation of Walsh's Sixth Amendment right to a speedy trial and further supports his counsel's reasonable decision not to object under the Sixth Amendment. For the second factor, although the Government sought the delays it was always with the statement that time was needed to get the detailed loss amount determined which was an essential determination for

Walsh. The difference in loss amount calculations could have impacted the Defendant and so although the Government sought the delay it was not to benefit the Government but rather to verify the loss amount for the Defendant so he would only be held responsible for those losses linked to him. Again, this is for the Defendant's benefit. Third, although Walsh never asserted his right to a speedy trial by protesting the Government's motions for extension, his counsel agreed to those extensions and that agreement is what forms the basis for his ineffective assistance of counsel claim. But most importantly, Walsh cannot set forth any fact that shows that the seven months spent by his attorney and the Government attorney reviewing the loss amounts caused any prejudice to him. Although he asserted unsupported claims of a "mass of digital ciphers and erroneous figures" as the result of a "data format conversion," this alleged erroneous figure is exactly what his lawyer and the Government were working on to avoid. (Dkt. No. 4 at 3.) They were spending those seven plus months ensuring that the numbers were right. Although he need not submit affirmative proof of how this prejudiced his case, he must at least identify how the delay was responsible for the prejudice. *See Williams v. Bartow*, 481 F.3d 492, 507 (7th Cir. 2007) (finding delay did not actually prejudice defendant where he did not show how delays caused witnesses' memories to deteriorate). Walsh does not explain how the delay caused alteration of the evidence, which is the critical question in the fourth Barker factor, and therefore he has not met his burden of demonstrating actual prejudice.

Probably recognizing that he has no support for his assertion that the numbers were erroneous, Walsh also claims that he lost 50 pounds while in custody.[2] (Dkt. No. 17 at 5.) To prove prejudice, a defendant does not need to present "affirmative proof of particularized prejudice" because "time's erosion of exculpatory evidence and testimony can rarely be shown."

---

[2] Walsh does not specify if he lost this weight during the seven month delay or if this is his total weight loss to date since his incarceration.

*Doggett*, 505 U.S. at 656 (citation omitted). Rather, actual prejudice to the defendant is examined in light of the interest the Sixth Amendment is designed to protect. *See United States v. Harmon*, 721 F.3d 877, 883 (7th Cir. 2013). These interests are "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id*. (quoting *United States v. Hasselbrock*, 663 F.3d 906, 915 (7th Cir. 2011)).

Walsh is therefore only left with a claim of prejudice for anxiety and concern over pending charges. Yet, anxiety and concern alone are "not enough to find a constitutional speedy trial violation." *Ashburn v. Korte*, 761 F.3d 741, 753 (7th Cir. 2014). Because the seven month delay did not actually prejudice and no Sixth Amendment violation occurred.

## V. Failure to Object to Preserve Appealable Issues

Walsh complains that he did not receive effective assistance of counsel because at sentencing his attorney did not object to the restitution order so as to preserve the issue on appeal. (Dkt. No. 1 at 10.) As a result, Walsh forfeited the right to challenge the restitution order and he argues that this forfeiture violated his Sixth Amendment rights. *Id.* at 10-11. The Government claims that Walsh fails to show that he was prejudiced by his attorney's failure to preserve this issue for appeal because the Seventh Circuit "considered and rejected those [forfeited] arguments as unsupported by the record." (Dkt. No. 16 at 25.) Indeed, the Seventh Circuit considered Walsh's challenge to the restitution order, and concluded that the Court's "calculation was a reasonable estimate of the loss." *Walsh*, 723 F.3d at 810. And contrary to Walsh's Section 2255 petition, the Seventh Circuit also addressed his challenge to the restitution order that he belatedly raised in response to the Government's motion to amend the total losses even though it too was forfeited for failure to object. *See id.* In response, the Seventh Circuit

13

held that "[g]iven our conclusion that the district court did not err in finding the loss amount, we find no plain error in the restitution order." *Id.* Accordingly, Walsh has not demonstrated that but for his attorney's failure to object to the restitution order, he would have succeeded on appeal because the Seventh Circuit in fact considered the arguments that Walsh forfeited and rejected them. Even if his attorney had objected and preserved the ability to challenge the restitution order on appeal, the Seventh Circuit would still have rejected them. In sum, Walsh's Sixth Amendment rights were not violated because he was not prejudiced by his attorney's failure to preserve a challenge to the restitution order on appeal.

## VI. Failure to Investigate

Walsh's next ineffective assistance of counsel claim opines that his counsel was ineffective for failing to reasonably investigate his case. (Dkt. No. 1 at 12.) Walsh argues that his attorney spent "no time" interviewing him or his expert witness except for three "cursory in-office meetings" between Walsh and his attorney and a brief conversation between his attorney and the expert witness. *Id.* at 12-13. The Government points to Walsh's testimony at the change of plea hearing where he stated that he was satisfied with his attorney's representation of him and that his attorney had answered all of his questions. (Dkt. No. 16 at 22.) The Government contends that Walsh has not satisfied the prejudice prong of the *Strickland* standard by demonstrating how but for the alleged lack of preparation and investigation by his attorney he would not have pled guilty. *Id.* In regards to Walsh's expert witness, the Government argues that Walsh fails to explain how the expert's testimony would have differed so as to benefit Walsh if his attorney had dedicated more time in preparing him. *Id.* at 23.

At Walsh's change of plea hearing, he testified that he read the entire plea agreement "as well as [he] can get through it." *Id.* at Ex. 1, Tr. at 8:3-8. The Court asked if he "asked [his]

attorney questions regarding it," to which Walsh replied, "On several occasions, yes." Tr. at 8:9-11. Walsh stated that he asked his attorney these questions "[b]y telephone and in person." Tr. at 8:15. In reference to Walsh's attorney, the Court inquired if Walsh was "satisfied with his representation of you?" and Walsh affirmed that "Yes, I am." Tr. at 8:16-18. Walsh had every opportunity to address the Court and tell the Court any problems that he had with his attorney. There were none then, and his plea was voluntary.

Asserting now that he did not meet with him enough is just one last ditch effort to say that his counsel was ineffective instead of effective as he stated under oath to this Court. Further, the amount of time that a defendant "has to consult with his attorney is of itself not an important consideration" when determining whether the attorney's assistance was ineffective. *United States v. Goad*, 44 F.3d 580 n.18 (7th Cir. 1995). The Seventh Circuit has held that there is no "minimum number of meetings between counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel." *Id.* (citing *United States ex rel. Kleba v. McGinnis*, 796 F.2d 947, 954 (7th Cir. 1986)). There is nothing in the record to suggest that the three times his attorney met with him constituted ineffectiveness nor did he assert that at his change of plea hearing. Consequently, Walsh's argument that his Sixth Amendment right to effective assistance of counsel was violated because his attorney did not dedicate sufficient time consulting with him is not supported by anything in the record. In addition, in order to fulfill the prejudice prong of *Strickland*, Walsh must show that there is a "reasonable probability" if he had more time with attorney, he would have elected to proceed to trial instead of pleading guilty. *Hill*, 474 U.S. at 59. Walsh, however, provides no evidence that had he had more time with his attorney there was a reasonable probability that he would have received a better result either based on a plea or from a jury. When claiming that his attorney's assistance was

ineffective, a defendant "cannot simply state that the [witness's] testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991). Rather, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit." *Id.* Walsh protests that "a single sub-three minute meeting the with the defense's expert witness" constitutes ineffective assistance of counsel, but does not offer any actual testimony by the expert witness or an affidavit establishing that the expert's testimony would have been favorable had Walsh's attorney spent more time preparing the expert. (Dkt. No. 1 at 12.) Accordingly, Walsh's argument that he received ineffective assistance of counsel because his attorney did not adequately prepare the expert witness is nothing more than "self-serving speculation." *Ashimi*, 932 F.2d at 650.

## VII. Failure to Object to Absence of Requisite Mens Rea

According to Walsh, his Sixth Amendment right to effective assistance of counsel was violated because his attorney "failed to raise at any time, in any hearing or proceeding, the absence of any indication of mens rea, an objection that if sustained would have invalidated my arrest." (Dkt. No. 1 at 14.) The Government responds that the "wire fraud charge to which Walsh pled guilty required to government to establish that Walsh an intent to defraud." (Dkt. No. 16 at 25.) In arguing that it would have been fruitless for Walsh's attorney to claim that he lacked the proper mens rea, the Government directs the Court to Walsh's plea agreement, plea colloquy, and sentencing hearing during which he admitted to the requisite intent to defraud. *Id.* at 25-26.

Walsh pled to wire fraud under 18 U.S.C. § 1343, which requires an intent to defraud. *See United State v. Philpot*, 733 F.3d 734, 739 (7th Cir. 2013) (explaining that wire fraud under

16

18 U.S.C. § 1343 "contain[s] a *mens rea* requirement of knowledge and intent to defraud"). Walsh signed the plea agreement stating that he pled guilty to wire fraud under this statute and therefore admitted to having the requisite intent to defraud. The Seventh Circuit provided a summation of the evidence showing that Walsh had intended to defraud One World customers:

> In addition to admitting to misappropriating $10 million in customer funds, Walsh admitted in his plea agreement that he and Martin "transferred One World customer margin funds to their personal accounts with the express intent to steal, embezzle and convert those funds." Walsh Plea Agreement 6. He also admitted that they "used the customer funds misappropriated to purchase goods and services for themselves, and to finance other personal business ventures." *Id.* And Walsh's admitted actions manifest his intent: He admitted to "misleading existing and prospective One World customers, lying to regulators about One World's financial condition, and ... making Ponzi-type payments to One World's pre-existing customers." *Id.* at 7. More particularly, Walsh admitted to sending emails to customers assuring them that One World would honor redemption requests when he knew that it lacked sufficient funds to do so. *Id.* at 11. Furthermore, he admitted that by April 2006 and continuing until October 2007, at his direction, One World "submitted false and misleading" financial reports to the CFTC. *Id.* at 9.

*Walsh*, 723 F.3d at 808. When Walsh was sentenced, he told the Court that his crime was an "act of greed" and that he "felt terrible about having broken the trust with people who were depending on me," specifically his "customers[.]" (Dkt. No. 16, Ex. B, Tr. at 85:15, 20-21.) These statements further demonstrate that Walsh intended to defraud. The Court finds that based on the overwhelming evidence of Walsh's intent to defraud, including admissions by Walsh himself in his plea agreement, plea colloquy, and sentencing that he was guilty of this crime, his attorney made a reasonable professional decision by choosing not to contest that Walsh had such intent. The Court thus concludes that his attorney's failure to argue that Walsh lacked the requisite mens rea did not violate his right to effective assistance of counsel.

## **CONCLUSION**

For the reasons stated above, the Court denies Walsh's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Dkt. No. 1.)


Date: 2/12/2016

_____
Virginia M. Kendall
United States District Judge